My name is Colin Walsh, and I represent Rachel Escamilla in this appeal. Summary judgments should be reversed for three reasons. First, there are numerous fact issues that only a jury can decide. Second, the District Court erred by not applying collateral estoppel to defendants' stated legitimate reason for terminating Ms. Escamilla. And third, the District Court required the improper pretext plus standard for Escamilla's evidence. I'll address each of those in turn, but first I wanted to note the procedural history of this case, because this is the second time we are hearing on a motion for summary judgment from defendant. Two years ago, this court issued an opinion reversing summary judgment the first time Escamilla had adequately invoked this court's jurisdiction for her Section 1981 claim. Once that case was remanded back to the District Court, the magistrate, sua sponte, requested defendant file a second motion for summary judgment on the merits of the 1981 claim. The District Court then granted that second motion for summary judgment. And as I will explain more fully, the District Court did so by resolving myriad fact issues that should have been left to the jury. So the issue before this court is whether there are genuine disputes of material fact that must be resolved by a jury. And here the answer is yes. Now I'm not going to address all of the factual issues in this case, but I will address some of the major ones casting doubt on the stated reason. And here the legitimate stated reason from defendants, according to their second motion for summary judgment, is an unauthorized license plate check by Escamilla that led to her termination. Here, Escamilla presented substantial evidence casting doubt on that, each of which, if taken individually or collectively, would allow a jury to find in favor of her in liability against Edwards County and Sheriff Elliott. And again, if it was individually believed or collectively believed, Escamilla could prevail in this case because summary judgment evidence is not viewed in a vacuum. So the two biggest pieces of evidence that we presented at summary judgment regarding whether or not the stated reason was actually true was Tammy Whitworth's declaration in the recorded statements of Bobby Boucher. Tammy Whitworth was a co-worker of Rachel Escamilla, and she filed a declaration in this case stating that numerous people have run plates, looked up information, and done research without authorization. Several people have done something similar to what the sheriff allegedly fired Rachel for, but not been fired for it. Ms. Whitworth went even further, stating that the only reason I can think of that Rachel Escamilla was terminated by Sheriff Elliott and I was not terminated at the same time is that Rachel is Hispanic and I am white. That's on one side of the scale. On the other side is the departmental policy saying that misuse of the computer system or unauthorized disclosure of confidential information is grounds for termination. Here if a jury believed Ms. Whitworth's testimony about how the policy is applied and that other people have engaged in the same behavior without being terminated, they could find in favor of Escamilla and that that was not the true reason for her termination. If on the other hand the jury resolves that fact dispute in favor of the department by finding that the departmental policy trumps Ms. Whitworth's statements regarding how that policy was applied, then Edwards County and Sheriff Elliott might prevail. However, the district court should not have resolved that issue for the jury by finding the written policy prevailed or trumped Ms. Whitworth's statements about how that policy was applied. And the same thing goes for Deputy Bobby Bruscia's recorded statements. Here Deputy Bobby Bruscia was tasked with investigating Rachel Escamilla and told to find something on her. He then wrote up a report saying that she engaged in an unauthorized license plate check. However, after he submitted that report, he told Escamilla, and we have the recorded statements, that he threw the paperwork together and that he in fact didn't find anything on Escamilla. If you listen to that recording, which is part of the record, you will hear him say multiple times there was nothing. There was nothing. And so once again, if a court or if a jury believes Deputy Bobby Bruscia's statements about the report, they could find in favor of Escamilla. If the jury instead credits the written report that he says he threw together, it could find in favor of Edwards County. And once again, it was improper for the district court to pick which one of those, to resolve that factual dispute, especially in favor of Edwards County and Sheriff Elliott by saying that his previous written report trumped Ms. Whitworth's statements. Why doesn't Oden control this case? I'm sorry, Your Honor, I didn't hear you. Why doesn't Oden control this case, this outcome? I don't understand the question. Why doesn't... Fifth Circuit case, Oden, from 2001. So Your Honor, I do not have briefing on that particular case and why it wouldn't control, except that I would say that it is well-established in summary judgment that all inferences must be made in favor of the plaintiff or the non-moving party, all conflicts must be resolved in favor of the plaintiff or the non-moving party, and the district court is not allowed to make inferences that would be favorable to the moving party or make hypothetical statements that would be favorable to the moving party. And so the standard summary judgment standard of review would be that all of these fact issues, because there is one side that could be resolved in favor of Ms. Escamilla, they could be resolved in favor of Ms. Escamilla at the summary judgment stage and allow a jury to ultimately determine which side is correct, Edwards County or Rachel Escamilla. Counsel, let me ask you, under the McDonnell-Douglas shifting framework, the district courts found that you had proven a prima facie case. You wouldn't dispute that. You do disagree there are more comparators than the district court allowed, but at least he found one or the jurors found one. And then a legitimate reason was stated, and there's no racial component to the reason it was stated. So it seems to me we're to whether you can show that was a pretext or not. Do you agree with mine that we're really at the pretext stage and you have enough evidence as the issue for us of a pretext? Is that the issue that we need to resolve or do you take us further back into those steps? Your Honor, I think that the main issue this court needs to resolve is whether there was sufficient evidence of pretext or casting doubt on that stated reason for a jury to find one. Let me ask you that. If that's where we are, does there have to be evidence not only that it wasn't the right reason as stated, but that it was an improper reason is what explains what happened. In other words, maybe it's not all that clear why, but there needs to be some evidence at the end of the day that this was done for improper reasons, which in this case is race. So I think what Your Honor is asking about is whether, well, I'll just go to it. It's the pretext plus standard. So under the McDonald-Douglas burden shifting, as Your Honor just articulated, if we establish a prima facie case that raises an inference of discrimination, they then state a legitimate non-discriminatory reason. And so the burden comes back to us to show pretext. And what the Supreme Court said in Reeves v. Sanderson-Plummy is all you need to do is cast doubt on that stated reason and falsity of the stated reason could well, is enough to defeat a motion for summary judgment or to create a fact issue for which a jury could decide in favor of the plaintiff. And this was, the pretext plus standard was something that has actually already, was addressed directly by the Supreme Court in Reeves v. Sanderson-Plummy and was repudiated by them. And this court acknowledged that the Supreme Court repudiated the pretext plus standard in the Russell v. McKinney hospital venture case. In that case, this court stated, the Supreme Court resolved the circuit split by repudiating the pretext plus approach. And what that means is that all Escamilla needs to do is cast doubt on that stated reason. And we have presented substantial and significant evidence casting doubt on it. For example, Ms. Whitworth's statements, Bobby Bush's statements. And again, even if there was some sort of component that required any kind of like wrongful or additional evidence, we have that in Ms. Whitworth's testimony. In her declaration, which was provided under penalty of perjury, she states that the only reason I can think of that Rachel Escamilla was terminated by Sheriff Elliott and I was not terminated at the same time is that Rachel is Hispanic and I am white. And that's even more powerful considering Bobby Bush's statements that he didn't find anything on Rachel Escamilla when he was tasked with finding something. And the other evidence. So for example, Rachel Escamilla provided evidence that she could not have done what she was alleged to have done because she was feeding inmates at the time. And so somebody else must have used her credentials to run that unauthorized license plate check. And that would actually be, again, consistent with Bobby Bush's statements that he found nothing. Here, the way the district court rejected that evidence was to hypothesize that even if that was true, even if she had not been able to do the things she was accused of, she would have engaged in another policy violation stating the plaintiff would have violated the company's confidentiality policy by allowing access to confidential information to others. And the problem with that is under the summary judgment standard, you cannot make inferences or hypotheses in favor of the moving party. And here, that basis for terminating Escamilla that she had violated the company's confidentiality policy by allowing others to use her credentials was not found in the termination letter. It was not found in the T. Cole F5 hearing. It was not found in Bush's report. And it wasn't presented to the grand jury. And so at this stage, it is not proper for the district court to hypothesize another potential violation that was not argued or alleged by defendant. And to the extent defendant would start arguing that that was another basis for her termination, that would be inconsistent reasons. And as this court stated in Caldwell, I believe, inconsistent reasons or changes in why a plaintiff was terminated or the adverse action was taken is evidence of pretext that defeats a motion for summary judgment. There's also evidence that Escamilla presented that the grand jury no billed her for the conduct she was alleged to have committed. And the reason that's important is because under Fifth Circuit precedent, one of the jurors did not find probable cause that the misconduct alleged was actually committed. And because this is summary judgment and because the standard is to make all reasonable inferences in favor of Escamilla, then the court was required to make that reasonable inference that this grand jury did not find probable cause that the alleged conduct had occurred. And again, when you add that in to the other evidence, to Bobby Bush's statements that he found nothing, but to the Teak Hall hearing that found no evidence was presented of the alleged misconduct, to the evidence that she wasn't even able to do it, and to Whitworth's statements that even if she had, it's not a terminable offense, it becomes very clear that there are these fact issues for a jury to resolve, which if they find in favor of Escamilla, they could find liability for Edwards County. And that leads me to the Teak Hall hearing. Again, this was Escamilla was dishonorably discharged for allegedly running an unauthorized license plate check. And at that hearing, Sheriff Elliott chose not to appear, and the Teak Hall administrative law judge issued a binding decision saying that no evidence had been presented and that the dishonorable discharge needed to be changed to an honorable discharge. That again, when combined with all of the other evidence that I've already listed, is strong evidence of the factual issues for a jury to decide why this case is not appropriate for summary judgment under the correct standard. Let me ask you how far your claims reach. Are you trying to hold the sheriff individually liable in her individual capacity, or are you just trying to hold the county liable and the sheriff in her official capacity, which then shifts back to the county? Are you seeking individual liability from the sheriff? We are, Your Honor. That's the Oden case that is mentioned in your friend on the other side brief, but you don't respond to it in your reply brief. You may not have looked at that aspect of it. But let me just that's fine. You don't need to do the research now. You might look at it for terms of rebuttal, but it does seem to me that O-D-E-N, the Oden  Your Honor, what I would say is that under Section 1981 and under this court's precedent interpreting Section 1981, this court has found individual liability when somebody is acting in the same capacity as the governmental entity. Let me just stop you there. You don't need to pursue this because I don't think you're familiar with the key opinion on that. So you can look at it if you want to, their brief, besides Oden, if you have access to their brief. But if not, we'll just deal with it on the briefing that we have. Yes, Your Honor, I will not take your time up by arguing about Oden. What I would say, though, is that the second one of the other reasons that summary judgment was inappropriate is because of collateral estoppel. Here, the T. Cole F-5 hearing addressed the same issue as to whether or not Escamilla was terminated for the conduct misalleged or an unauthorized license plate check. There are three components to collateral estoppel. The first is that the identical issue be previously adjudicated. And here, she was fired for conducting an unauthorized license plate check. That was the whole purpose of the T. Cole hearing, which was to show the alleged misconduct occurred. So the first prong is met. The second prong is actual litigation of the issue. And that is a little bit of a misnomer because under Texas law, all that's required is a full and fair opportunity to litigate. And here, that unquestionably happened because of. Let's let's take a hypothetical. Let's take a hypothetical in which an employer at a factory thinks that one of his employees has been shoplifting at Walmart. All right. You can fire that employee at the at will doctrine, employment at will doctrine. And even if it turns out there was never any shoplifting, it was just a baseless claim. If the employer thought that there was no, it was not pretextual. That's enough. So I don't understand why any kind of administrative proceedings having to do with whether she did or didn't run the license plate check is even relevant if the employer thought so. Well, because the employer is required under the statute to present evidence at this administrative hearing that the alleged misconduct actually occurred. And here, Sheriff Elliott did not show up. One of the inferences might be that she didn't have the evidence, which would be consistent with all of the other evidence of pretext that I've already discussed. Bobby Bush's statements that he didn't find anything, the no bill by the grand jury. But the other issue that makes this, that makes that not a good argument for defending is the fact that according to Sheriff Elliott, she actually corroborated this information before she fired Escamilla. And so here you have her alleging that she corroborated this information, yet she didn't provide any evidence of it at the T5, the T-Call F5 hearings. Thank you, Your Honor. Yes, Your Honors. Good afternoon. May it please the court, counsel. My name is Charles Fruggerio. I have the pleasure of representing Sheriff Pamela Elliott in Edwards County. And specifically to answer Judge Wiener's question, the Odden case, it does, my position is it does apply. It was a Mississippi Sheriff and that specific case says that he would not, under section 1981, would not be liable individually. He would only bind over the county as the policymaker in his official capacity. Let me ask you, was this argued, orally argued the first time you were here? Yes, it was, Your Honor. Let me mention that it's a very unique case because really this case was litigated as a first amendment case. That's really what this was. Section 1983, first amendment, it was depositions, et cetera. And the court granted summary judgment, but it left out section 1981 because it said it wasn't connected to 1983. And that this court held that without making any determination as to the merits of 1981, that it needed to re-examine 1981. And the reason this is interesting, and I raised it in the brief, the court did not agree with me, but it's basically a circumventing of Title VII because it didn't timely file a Title VII case timely and therefore he's using 1981 and that's how we get to the McDonnell Douglas standard. Otherwise, we wouldn't even be here. But since we are here, I judge the Southquake, the real issue is pretext. Since you're going through that issue, the issue is, was there a pretext? We had a legitimate reason. And that legitimate reason under TLETS and under the Texas, TCOLE is like the governing body for law enforcement as well as dispatchers at radio communication. And when dispatchers, they have, it's called a TLETS certification and they are fully aware that for them, when you're a certified TLETS operator, you have to have a law enforcement officer request a license plate check. And Ms. Escamilla was fully aware of that. She, she knew that in her deposition. She said she knew she couldn't do it without a law enforcement representative asking her for it. And she knew it was a violation of law if she did it. The problem, she continually said she didn't do it. Well, Bobby Bushka and the hard fact evidence showed that it was her TLETS call on ID that acknowledged that license plate at 520 PM on June the 7th of 2014. So there's no question that her ID did the check. The only other possible explanation, there's only two people in the jail, was her and Tammy Whitworth. If Tammy Whitworth did it, well, that's, she either left her computer on or told somebody about her TLETS, which you shouldn't do because that's personal to you and you can be responsible for it. So what it's either neglect or really that you actually did it and, and you, you don't want to, to fess up to it, so to speak. What's interesting in this, these individuals have been terminated. Whitworth was terminated subsequently also. And so after she's terminated, they have this tape that is part of the evidence in the case, but the one thing that's very interesting is she never asked, Ms. Escamilla never asks Whitworth, why did you look into, why did you use my ID to look up the license plate? She asked her all these other allegations as to why, why do you think the sheriff fired me and et cetera. But the one question that was, it stands out, if you really felt you didn't look up the license plate would be, why did you look it up? Cause there's only two people in the jail that could have. When were those questions being asked? You say, why didn't you? There was a, it was like, I call it a surreptitious tape, but it was a tape conversation where plaintiff Escamilla is talking on her cell phone to Whitworth after Whitworth's fired. And Whitworth got fired for another, it had nothing to do with a license plate check. It's, it's almost like a paid in place, quite frankly, you know, there's only 17 employees, but it's amazing. The different stories and the problem with Ms. Whitworth is that her son was continually being incarcerated at that jail. And she was giving her son special, she was giving him money. And she also let him use a cell phone. And after a while, the sheriff, she just said, that's a violation of policy. You know, it's a violation of policy. And that's why she was terminated. After that termination, then we have this phone conversation of which it's never asked why, why did you use my TLET's login information, which I believe leads to the point, she didn't ask the question because she knew she actually had done the TLET's information. With regard to some of the issues that my counsel, Pound's counsel has brought up with regard to the F-5 hearing in Collateral Estoppel, the Bradbury case, which we cite Bradbury versus Jefferson is right on point. That's where it's all, that was also an F-5 hearing where an officer had been terminated for usuro, and he was trying to use that, the fact that the F-5, he was able to obtain a favorable outcome at the administrative law judge hearing as Collateral Estoppel, and the court said, no, it's a different, it's a different kind of, it's a different case. And it's, it doesn't apply. I mean, there's numerous other allegations and administrative law judges use a different standard of proof. The fact that she didn't show up, that was automatic. There was no evidence admitted because under administrative law in Texas, the sheriff actually has the burden to put forth evidence. Let me have you respond. The explanation for all of this that comes from opposing counsel is that just a series of things, series of facts, you have Whitworth was actually a proper comparator and you acknowledged, I think, in district court that she would be a proper comparator as well as Ortiz. He wants to make a fair amount of counsel out of the fact that the sheriff wouldn't defend her actions at this hearing, whatever you make of that. At least that's on that side of the scale, maybe fairly light. There was fairly common in this small station for people not to log off of their computers, or they should have. I guess that's evidence in the record and it's not in the brief. He's just saying there's enough uncertainty there about the legitimacy of this statement by the sheriff that that's why this woman was fired. That didn't want to speak to material fact. What do you say to that? Yes, your honor. First, I never admitted that Ms. Whitworth was a comparator because of the fact that she was a totally different circumstance concerning her son. I said that she was also a dispatcher in my brief, but the two dispatch, the only person that can be a comparator because there's a dispatch at the same position in the same violation of policy would be Ortiz. But I mean, irregardless, we get to the prima facie. I mean, we get to the pretext anyway, because the maximum. I guess all I'm saying is if there are multiple people to, I don't want to overstate it, if there are two, that does start to add a little more weight. Once you get past prima facie, once you get past legitimate non-discriminatory reason, all of that goes into the mix once you get all the way through the McDonnell Douglas factors. So if several people were treated, two people were treated differently than Escamilla, that it is relevant, it seems. And your honor, what, what really, what we have here is there, the allegation is that Bouchica didn't find anything. No, it's in the record what he did find in his investigation, which was turned over to the district attorney. He found that there were no, uh, he interviewed other dispatchers and no one said that they thought freely and voluntarily shared their IDs and that everybody normally would go on each other's computer, an affidavit that says the computers were left on and it was easy to use. I mean, what, what's in the record in so far as evidence about the sort of loose practices on these computers? Well, the Bouchica investigation, which is an official police report that was turned over to the district attorney, shows that it was not common practice as, as alleged by the appellant, that they used each other's TLET's logins. So that is evidence that directly contradicts that. And in the ultimate... Where it's not, on the plaintiff's side, there's not evidence that, that, that the computers were not carefully maintained and, and this, and this report is contrary evidence? Is there no evidence to support what he said about the, uh, loose practices with the computers? Other than after Whitworth has been fired, then she gives this statement while she's being taped on a cell phone. Is that evidence that we have to weigh on deciding if there's a genuine dispute of material fact? I don't, I don't think it's evidence of discrimination. There, there's really no evidence of discrimination other than the fact that she was terminated because you violated the policy. And if, once you violate the policy, I think the case law is clear in the fifth circuit, you need to show substantial evidence that there's pretext and there really is no pretext of discrimination. That's not the reason that Sheriff Elliott fired her. She fired her because she violated the policy. I think I've addressed the, the TLETS issue with regard to, uh, the F5 issue as well, and the grand jury, I wanted to address that as well, uh, and, and this, this circuit, U.S. versus Fields, a no bill is a decision not to charge the accused with a particular offense, not a judgment that no unlawful conduct occurred. Now she, uh, the fact that she was no bill is not evidence of pretext number one, and when we look at the other comparator, Mr. Ortiz, this is an important issue because the sheriff was best friends with Ortiz's mother, Mrs. Ortiz, because of that, she didn't want to have the appearance of impropriety, so she called in the Texas Rangers and the Texas Rangers took over the Ortiz issue to see whether or not they turned it over to the grand jury, but she kept her hands out, but she turned those issues over because under Texas law, that's an official myth. It's a misuse of a governmental information under the Texas, Texas penal code section 39.06 misuse of public information, which could potentially be a third degree felony. So I believe that there's no evidence. I think the ultimate issue is pretext. There is no issue of pretext. The Kitchens case was the case that, uh, Kitchens versus BASF that we cite in our brief, that's a case where the employer, uh, he had a policy, did not showing up to work inebriated. This individual was, at least in the mind of the employer, was inebriated and then he violated policy and he was fired, and that case went on to say whether or not your, the testing was done, that he was inebriated was right or wrong. The issue is you fired him because you felt he violated policy. And that is, uh, it's a non-discriminatory reason. You can sometimes be wrong. Even that doesn't even have to be logical. You just can't fire somebody for a non, for a discriminatory reason. And because of that, your honors, I would request that you affirm the, uh, the grant of summary judgment in this case. Thank you. All right. Thank you, Mr. Giorgio. Mr. Walsh, you've saved some time for a vote. Thank you, Your Honor. Just a couple of points, or just a few points. So first I want to address a couple of things that opposing counsel did up. And what he did was he came up and asked this court to again, resolve the fact issues that the district court resolved. So for example, he talked extensively about a conversation that Rachel Escamilla recorded with her friend, Tammy Whitworth, in which he asked this court to infer that Escamilla did not ask Tammy Whitworth why she used her, why she used Escamilla's credentials because she knew that she had actually engaged in that wrong conduct. Again, the problem with that is that would be asking this court to make several inferences in favor of the moving party. And that's just not permitted at the summary judgment stage. Now a jury could make all of those inferences. And I fully expect that Mr. Fuggerio would present that to a jury and say, why wasn't that brought up? But at the same time, the jury would also be able to evaluate Tammy Whitworth's other declaration stating the only reason she can think of Escamilla was fired was because she was Hispanic and that others have engaged in similar behavior and not been fired for it. And so the jury, or so the judge, the district court can't pick and choose which evidence at this time to believe if one side would favor Escamilla and one side would favor Edwards County and Sheriff Elliott. And that's the same thing that goes for Bobby Bush's written report. Indeed, he did write this report stating that she had engaged in this conduct, but later he said he threw that paperwork together and he found nothing. There was nothing. There was nothing, he says on the recording. And so again, the jury gets to weigh whether or not the written report is or whether his later statements that he was tasked with investigating and finding something that he didn't, uh, are more credible. And again, that's a decision only the jury can make and not a district court. I'd also like to address the Bradbury case involving a collateral, a collateral estoppel. And I want to talk about why that case is distinguishable because it does involve a Ticole F5 hearing in which this court found that that did not provide collateral estoppel. But the way that's distinguishable also shows why it applies in our case and not that case. And that's because in Bradbury, the plaintiff had asked for an affirmative summary judgment on the particular issue of discrimination under USERRA. And so the court was asked whether or not the Ticole F5 hearing had addressed whether or not discrimination based on military status had been decided by the administrative law judge. And what, uh, Judge Southwick held was that, no, that issue had not been ruled upon. What the whole panel held, what I said, the panel held that the panel, yes, sorry, Your Honor, but you wrote the opinion and, but what, but what you said in your opinion for the unanimous panel was that that had not been decided because the issue of discriminatory motivation had not been determined by the administrative law judge. We are not asking for affirmative summary judgment in our favor. We think this case should go to a jury so that they can weigh the evidence and decide, uh, what really happened. All we are saying is that they, is the defendants should be collaterally estopped from reasserting that she engaged in this unauthorized license plate check when an administrative law judge has already ruled on that. It was necessary to the decision and Edwards County had a full and fair opportunity, although they did not take it and chose not to take it, to litigate that matter. And under the elements of collateral estoppel, we have established that. And so defendants should be precluded from doing that. It seems to me that your argument of discrimination is that your client is Hispanic. The only comparator is also Hispanic, uh, though a male district judge addressed that, a magistrate judge, an important recommendation there. So you're making a specific claim of discrimination against Hispanic women as a subcategory, uh, as opposed to Hispanic generally, since Ortiz is the comparator and was treated better than your client. And so no discrimination against that Hispanic man, how does that fit into the case law? So what I would say, Your Honor, is that's why it's important that the concessions defendant made in their brief, where they talk about how Tammy Whitworth is a comparator, Bobby Boucher is a comparator, and Ortiz is a discrimination is not proper for the district court to have rejected the prima facie case. I would also say, and I see that my time is up, but I assume you'd like me to finish my response. I'll try to be as quickly as quick as possible, Your Honor. But what I would say about that is that that's two different, this is going to sound complicated. There's two different, uh, issues here. So Bobby Boucher and, um, I guess it may be too long an answer. Oh, thank you. Sorry, Your Honor. Thank you. Simply ask the Senate. Last case for today.